UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| ROY PHILLIPS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:18-cv-00785-AGF |
| | ) | |
| ROBERT GOULD, et. al, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Roy Phillips, a Missouri Department of Corrections ("MODOC") inmate and former participant in MODOC's Sex Offender Program ("MOSOP"), filed this complaint, through counsel, on May 22, 2018, asserting discrimination on the basis of a disability (vision impairment) in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., arising out of his termination from MOSOP on March 29, 2016.

The matter is now before the Court on the motion (ECF No. 50) for summary judgment filed by the remaining Defendants in this case, sued in their official capacity: Cindy Griffith, warden at MODOC's Potosi Correctional Center; Lindell Edmonds, a MOSOP case manager at MODOC's Farmington Correctional Center ("FCC"); Scott O'Kelley, Assistant Division Director of MODOC's Mental Health Services, Division of Offender Rehabilitative Services; and Matthew Sturm, Deputy Director of Corrections for MODOC.  For the reasons set forth below, the Court will grant Defendants' motion.

## BACKGROUND

Viewing the facts and all reasonable inferences in the light most favorable to Plaintiff, for purposes of the summary judgment motion, the record establishes the following facts.  Plaintiff is currently in the custody of MODOC at Northeast Correctional Center ("NECC").  Starting in November 2015, Plaintiff was housed at the FCC for participation in MOSOP.  MOSOP is a voluntary program, but inmates confined for sexual assault offenses must successfully complete the program in order to be eligible for parole and/or conditional release.

At all relevant times, Plaintiff had difficulty reading smaller, regular print without eyeglasses, and he had dry eyes for which he needed eye wash, eye drops, and eye ointment.  Without eyeglasses, Plaintiff could read large print such as exit signs on a building; could write at least in large print, though less legibly than he could with eyeglasses; and could perform his work at the NECC recreational center.  With eyeglasses, Plaintiff could write within the lines and in small print; Plaintiff contends this required prescription eyeglasses.

While he was incarcerated but several years before beginning MOSOP, Plaintiff's prescription eyeglasses were broken.  At Plaintiff's request, the State of Missouri eventually purchased and provided Plaintiff one pair of "personal" eyeglasses in May 2010.  Plaintiff contends that, although the State labeled these eyeglasses as "personal," they did not match his proper prescription.

Before Plaintiff began MOSOP, the "personal" eyeglasses provided by the State broke, and the State would not pay to replace them.  Instead, the State provided Plaintiff

with several pairs of non-prescription eyeglasses.  Plaintiff contends that these non-prescription eyeglasses did not sufficiently correct his vision impairment.  At Plaintiff's request, the State also provided Plaintiff with artificial tears and ocular lubricant as keep-on-person medications on multiple occasions in 2015 and 2016.  However, Plaintiff alleges that the State did not fulfill his requests in a timely manner.

Plaintiff initially began MOSOP on January 7, 2016, but he was terminated from the program on January 28, 2016, after being placed in administrative segregation for a conduct violation.  Plaintiff re-entered MOSOP on March 3, 2016.  At that time, Plaintiff had only the non-prescription eyeglasses that MODOC had provided him.

MOSOP is comprised of two phases, Phase I and Phase II, and completion of both phases is required for successful completion of the MOSOP program.  During Phase I, a sex offender's readiness for treatment is measured based on a risk assessment and a clinical interview, as well as participation in educational classes.  A sex offender is required to complete the clinical interview in an appropriate fashion, acknowledge responsibility for the sex offense, and cooperate appropriately in the entire Phase I process.  MOSOP clinicians utilize clinical judgment to assess whether a clinical interview has been appropriately completed.  A sex offender must fill out the clinical interview form as honestly and openly as possible.

As part of MOSOP Phase I, Plaintiff was provided a clinical interview form for completion by March 16, 2016.  An inmate volunteer or someone else read Plaintiff the small print on the clinical interview form, and Plaintiff handwrote some, but not all, of the required responses in the appropriate spaces.  Plaintiff was able to discern the lines on

the clinical interview form requiring a written response.  Based on Plaintiff's incomplete clinical interview form, his clinical interview was rescheduled from March 16, 2016, to March 23, 2016.

During the March 23, 2016, clinical interview with a MOSOP psychometrist, Plaintiff informed the psychometrist that he had not completed his clinical interview form because he had problems seeing.  The psychometrist then attempted to complete the clinical interview form on Plaintiff's behalf by verbally asking Plaintiff the questions and writing Plaintiff's answers.  However, Plaintiff alleges that the psychometrist asked him more than the questions on the form and further demanded that Plaintiff admit to offense conduct that he did not commit and of which he was not convicted.

After Plaintiff refused to answer some questions, the psychometrist determined that Plaintiff appeared to be disengaged, not fully invested in the clinical interview process, and not committed to the MOSOP program.  Accordingly, Plaintiff was referred to the MOSOP treatment team for evaluation on March 24, 2016.

Based upon the referral from the psychometrist, the MOSOP treatment team met with Plaintiff on March 29, 2016.  During that meeting, a MOSOP treatment team member noted that Plaintiff presented as evasive and defiant, and therefore, failed to comply with Phase 1 expectations.  Plaintiff disputes that he was evasive or defiant.  The treatment team gave Plaintiff multiple opportunities during the meeting to take responsibility for certain sexual acts, but Plaintiff refused to do so.  Plaintiff contends that he should not have been required to admit or take responsibility for the sexual acts in

4

question because those acts were not an element of the offense to which Plaintiff pled guilty.

During the meeting, the treatment team also informed Plaintiff that all clinical interview form questions must have a response and that the response must be appropriate. Plaintiff told the treatment team that he did not complete some questions on the clinical interview form because he did not believe the questions were relevant and because he could not see the form or get help with answering the form.  A treatment team member responded by noting that Plaintiff was able to write responses to some questions on the form, despite his assertion that he could not properly see the form, and that he had responded to some of those questions with inappropriate comments.

During the same meeting, Plaintiff refused to verbally answer questions posed by the treatment team, and he indicated that this refusal was due to legal issues involving his ex-wife.  Although Plaintiff does not dispute that he refused to answer some questions, Plaintiff contends that the questions were improper because they asked him to admit to conduct beyond the scope of the offense to which he pled guilty.

Plaintiff was terminated from MOSOP Phase 1 on March 29, 2016.  According to MOSOP, this termination was due to Plaintiff's refusal to take responsibility for, and to acknowledge, the offense of which he was convicted, as well as Plaintiff's refusal to adequately answer questions asked of him on the clinical interview form and again during the treatment team meeting.

Plaintiff filed his complaint in this case on May 22, 2018.  ECF No. 1.  The original complaint was filed against Defendants in their individual and official capacities,

and asserted two claims: (1) denial of due process in violation of 42 U.S.C. § 1983; and (2) discrimination on the basis of a disability in violation of Title II of the ADA.  Since the filing of the original complaint, Plaintiff voluntarily dismissed Count I, and the Court dismissed Plaintiff's claims against the Defendants in their individual capacities only. *See* ECF No. 28.  Therefore, the only remaining claim is the disability discrimination claim under Title II of the ADA, against Defendants in their official capacities only.

In that claim, as noted above, Plaintiff alleges that his vision impairment and dry eyes constitutes a disability under the ADA and that he was terminated from MOSOP based on this disability, without reasonable accommodation from the State.

Plaintiff seeks declaratory relief in the form of an immediate transfer to a MODOC facility where he may resume participation in MOSOP, with credit for his participation in the program granted up to the date of his termination, and reasonable accommodations for his disability so that he can participate in and successfully complete MOSOP.  Plaintiff also seeks an award of attorneys' fees and costs.

## ARGUMENTS OF THE PARTIES

Defendants argue that summary judgment is warranted for several reasons.  First, Defendants argue that Plaintiff's vision impairment is not a disability within the meaning of Title II of the ADA because it does not substantially limit one or more of Plaintiff's major life activities, particularly when considering the ameliorative effects  of eyeglasses. Next, Defendants argue that even if Plaintiff's vision impairment were a disability, Plaintiff was afforded a reasonable accommodation, including assistance in reading and filling out forms by other inmates and the MOSOP psychometrist.  Finally, Defendants

6

argue that Plaintiff cannot prove discrimination because he was terminated from MOSOP Phase 1 due to reasons unrelated to his alleged disability, namely, his refusal to take responsibility for, and to acknowledge, the offense of which he was convicted.[1]

In response, Plaintiff argues that his vision impairment constitutes a disability under the ADA; that there is a genuine dispute of material fact as to whether he was afforded a reasonable accommodation, based on the nature and extent of the assistance provided by the volunteer inmates and the psychometrist; and that factual issues also remain regarding whether the primary reason proffered by Defendants for Plaintiff's termination from MOSOP was false and pretextual.

## DISCUSSION

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Metro. Prop. & Cas. Ins. Co. v. Calvin*, 802 F.3d 933, 937 (8th Cir. 2015). In opposing summary judgment, a plaintiff may not "simply point to allegations" in the complaint, *Howard v. Columbia Pub. Sch. Dist.*, 363 F.3d 797, 800 (8th Cir. 2004), or "rest on the hope of discrediting the movant's evidence at trial," *Matter of Citizens Loan & Sav. Co.*, 621 F.2d 911, 913 (8th Cir. 1980). Rather,

---

[1]   Defendants also argue that several of them were not personally involved in the MOSOP program or in the decision to terminate Plaintiff from MOSOP. However, as noted previously, the only remaining claim in this case is an official-capacity claim. And as a "suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity," *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010), this Court does not see the need to address the individual Defendants' arguments regarding their lack of personal involvement.

the plaintiff "must identify and provide evidence of specific facts creating a triable controversy." *Howard*, 363 F.3d at 800 (citation omitted).

Title II of the ADA applies to inmates in state prisons. *See Pa. Dep't of Corrections v. Yeskey*, 524 U.S. 206, 209-11 (1998). Plaintiff alleges that Defendants violated Title II by terminating him from MOSOP because of his disability. "In the absence of direct evidence of discrimination, [this Court] will analyze [Plaintiff's] disability discrimination claim under the *McDonnell Douglas* burden-shifting framework." *See Power v. Univ. of N.D. Sch. of Law*, 954 F.3d 1047, 1052 (8th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

Plaintiff must first state a prima facie claim under Title II of the ADA by showing that "1) he is a person with a disability as defined by statute; 2) he is otherwise qualified for the benefit in question; and 3) he was excluded from the benefit due to discrimination based upon disability." *Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). "A qualified individual with a disability is defined as any person who 'meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity.'" *Id.* at 857 (quoting 42 U.S.C. § 12131(2)).

Presuming for this analysis that Plaintiff has met the requirements of a prima facie case of discrimination, the burden shifts to Defendants "to articulate a legitimate, nondiscriminatory reason" for Plaintiff's termination from MOSOP. *See Power*, 954 F.3d at 1052; *see also Torgerson v. City of Rochester*, 643 F.3d 1031, 1046 (8th Cir. 2011). Defendants have met this burden by consistently explaining the reasoning for Plaintiff's termination from MOSOP as Plaintiff's refusal to take responsibility for, and

to acknowledge, the offense of which he was convicted and Plaintiff's failure to adequately answer questions asked of him on the clinical interview form and again verbally during the treatment team meeting.[2]

To survive summary judgment, Plaintiff must therefore demonstrate that a genuine issue of material fact remains as to whether Defendants' purported legitimate reason for Plaintiff's termination from MOSOP is pretextual.  *See Power*, 954 F.3d at 1053.  This requires Plaintiff to show that disability discrimination, and not Defendants' stated reasons, motivated the decision to terminate Plaintiff from MOSOP.  *Id.*

Plaintiff contends that the Defendants' stated reason for the termination was pretextual because Defendants "knew that they could not premise [Plaintiff's] termination on [P]laintiff's failure to admit to sexual offenses for which he was never convicted, which itself constitutes a violation of, and is contrary to, [MODOC] and M[O]SOP policy."  ECF No. 56-15.  But whether or not Plaintiff should have been required to admit to the sexual conduct in question is wholly irrelevant to the question of whether Plaintiff was terminated because of his vision impairment.  Put simply, "a reason cannot be proved to be a pretext *for discrimination* unless it is shown *both* that the reason was

---

[2]     Importantly, in his brief before this Court, Plaintiff does not dispute that he was physically able to answer questions, at least some of which were repeated to him verbally during the treatment team meeting, or that he refused to do so.  Indeed, as MOSOP noted during the treatment team meeting and as Plaintiff concedes, Plaintiff's alleged vision impairment did not prevent him from writing answers to at least some of the written questions.  Plaintiff's primary argument is that he should not have had to answer some questions—verbally or in writing—because the questions themselves were improper.

false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original).

Plaintiff has not offered any specific, competent evidence from which a reasonable jury could conclude that discrimination based on Plaintiff's alleged vision impairment was the real reason for his termination from MOSOP.  Even a "generous reading" of Plaintiff's pretext claim does not show "any proof of discriminatory intent" or that Defendants used pretext to terminate Plaintiff from MOSOP.  *See Power*, 954 F.3d at 1054, 1055.

For this reason, the Court will grant Defendants' motion without reaching the questions of whether Plaintiff's visual impairments constitute a disability under the ADA or whether Plaintiff was afforded a reasonable accommodation.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the motion for summary judgment filed by Defendants Cindy Griffith, Lindell Edmonds, Scott O'Kelley, and Matthew Sturm is **GRANTED**.  ECF No. 50.

All claims against all parties having been resolved, a separate Judgment shall accompany this Memorandum and Order

AUDREY G.  FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 20th day of May, 2020.

10